UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 8878 |
| v. | ) | |
| | ) | Chief Judge Pallmeyer |
| LOUIS DeJOY, Postmaster General, United States Postal Service, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE
CERTAIN EVIDENCE AND ARGUMENT AT TRIAL**

Defendant Louis DeJoy, Postmaster General of the United States Postal Service ("Postal Service"), by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, moves *in limine* for orders barring certain evidence and argument at trial, stating:

**MIL No. 1:** **Defendant's Motion *In Limine* To Exclude Argument That A Transfer To A New Supervisor Was A Reasonable Accommodation**

1. Plaintiff Sharon Johnson argues that the Postal Service failed to accommodate her when it delayed transferring her from being supervised by Rondell Saddler at the Lincoln Park location to a new location with another supervisor. Mem. Op. at 10 – 13, Dkt. 58. Johnson argues that a transfer was necessary to accommodate her disability because her disability, namely anxiety and depression, was worsened when she worked under Saddler. *Id.* at 11. She claims that she could not work under Saddler (Johnson Dep. at 30, ln. 4 – p. 31, ln. 24 ("I couldn't work under [Saddler]"; "Q: [Y]ou didn't want to work under that supervisor [Saddler] anymore? A: Yes."); at 70, ln. 18 – 22 ("I told her I couldn't work under Rondell Saddler"), attached as Exhibit 1), and she asked for herself or Saddler to be transferred, *Id.* at 35, ln. 22 – 24 ("I had been asking Miss Hall before May the 20th can she either transfer me or transfer Rondell Saddler."). In her response

to defendant's statement of facts, Johnson states that she "verbally requested to be transferred *away from* supervisor Saddler on or around January 9, 2013, May 20, 2013, June 19, 2013, and July 18, 2013." Pl.'s 56.3, Dkt. 51 ¶ 13 (emphasis added); *accord* Pl.'s 56.3, Dkt. 51 ¶ 33 ("Johnson requested in writing in May of 2013 to be transferred away from supervisor Saddler as a reasonable accommodation . . .").

2. Thus, according to her, the Postal Service was required to transfer her to another location with a different supervisor as a reasonable accommodation so that she would not have to work in the allegedly hostile environment created by Saddler, her supervisor. *See* Mem. Op. at 10 – 13, Dkt. 58.

3. This request for accommodation as a basis of liability should be excluded from trial based on controlling Seventh Circuit precedent that requesting a transfer to get a new supervisor is not a *reasonable* request for accommodation.

4. In *Weiler v. Household Fin. Corp.*, 101 F.3d 519 (7th Cir. 1996), the plaintiff similarly claimed that the defendant failed to reasonably accommodate her as required under the ADA by refusing to transfer her to a different supervisor when her current supervisor caused her anxiety, depression, and a joint disorder. *Weiler*, 101 F.3d at 522. The Seventh Circuit affirmed the district court's grant of summary judgment, finding that the ADA did not require the defendant to transfer plaintiff to work for another supervisor. The court reasoned that having the plaintiff return to work under a different supervisor is a "decision" that "remains with the employer." *Id.* at 526.

5. The Seventh Circuit characterized the plaintiff's argument: "In essence, [plaintiff] asks us to allow her to establish the conditions of her employment, most notably, who will supervise her. Nothing in the ADA allows this shift in responsibility." *Id.; see Palmer v. Circuit Court of Cook Cty., Ill.*, 117 F.3d 351, 352 (7th Cir. 1997) ("[A] personality conflict with a

supervisor or coworker does not establish a disability within the meaning of the disability law, even if it produces anxiety and depression, as such conflicts often do.").

6. *Weiler* remains controlling precedent. The Seventh Circuit has favorably cited and reaffirmed its holding in *Weiler* multiple times. *See, e.g.*, *Bradford v. City of Chicago*, 121 F. App'x 137, 140 (7th Cir. 2005); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1062 (7th Cir. 2000); *Makeda-Phillips v. Illinois Sec'y of State,* 642 F. App'x 616 (7th Cir. 2016).

7. Following circuit precedent, this court has similarly held that requesting a transfer to a new supervisor because a plaintiff cannot work with a specific supervisor *is not* a reasonable accommodation under the ADA as a matter of law. *See, e.g.*, *Cortez v. Amazon.com, Inc.*, No. 17-CV-7322, 2020 WL 1445628, at *6 (N.D. Ill. Mar. 25, 2020) ("The accommodation her doctor suggested—moving her away from the employees who caused her anxiety—was not reasonable as a matter of law."); *Pack v. Illinois Dep't of Healthcare & Fam. Servs.*, No. 13-CV-8930, 2014 WL 3704917, at *3 (N.D. Ill. July 25, 2014) ("Plaintiff has pleaded herself out of court because her allegations indicate that she only requested, and would only accept, one accommodation—to work under a new supervisor—which courts have repeatedly held is not a reasonable request."); *Scott v. Kaneland Cmty. Unit Sch. Dist. No. 302*, 898 F. Supp. 2d 1001, 1008 (N.D. Ill. 2012) ("The Seventh Circuit has indicated that in a situation when 'the plaintiff alleges that working with a particular supervisor caused him stress, which in turn led to disorders and disabling depression and anxiety, an accommodation to be assigned to work with a different supervisor' is not a reasonable accommodation.") (brackets and alterations omitted); *Poff v. Rockford Public School District # 205*, 2009 WL 48344 (N.D. Ill. Feb. 25, 2009) ("If working under [current supervisor] was the only thing preventing plaintiff from returning to work, then she does not have a disability for purposes of the ADA. Moreover, even if plaintiff is considered disabled, she is not entitled to change the conditions of her employment by demanding a different supervisor."); *Bradford v. City*

*of Chicago*, 308 F. Supp. 2d 895, 899 (N.D. Ill. 2004), *aff'd*, 121 F. App'x 137 (7th Cir. 2005) ("The accommodation Mr. Bradford sought was transfer to another department where he would have a new supervisor and new co-workers. As a threshold matter, the ADA does not require an employer to transfer an employee to avoid working with certain supervisors or co-workers."); *cf. Tyler v. Comprehensive Health Mgmt., Inc.*, No. 11 C 9262, 2015 WL 122754 (N.D. Ill. Jan. 6, 2015) (finding that the plaintiff was not substantially limited where her "problems at work were all specific to her particular position and to her particular supervisor"). Thus, requesting to transfer to another supervisor is not a reasonable accommodation as a matter of law.

8. The court should therefore preclude Johnson from presenting evidence and arguing that the Postal Service failed to reasonably accommodate her by not transferring her to another location so that she could avoid working under Saddler. As the Seventh Circuit and district court cases cited above demonstrate, Johnson's requested accommodation of a transfer to avoid working under Saddler is not considered a *reasonable* accommodation request *as a matter of law*. According to the Seventh Circuit, "the choice of a supervisor belongs to the employer, not the employee." *Bradford v. City of Chicago*, 121 F. App'x 137, 140 (7th Cir. 2005) (stating that "a transfer away from particular supervisors or co-workers is not required as a 'reasonable accommodation' under the ADA").

9. Thus, this court should exclude any evidence or argument that the Postal Service failed to accommodate Johnson by refusing to transfer her, or by delaying her transfer, because such a request is not reasonable as a matter of law. To allow Johnson's evidence and argument on this point to go to the jury would contravene Seventh Circuit law.

WHEREFORE, the defendant requests that the court bar the plaintiff from presenting evidence and argument that her transfer request was a reasonable accommodation.

4

**MIL No. 2: Defendant's Motion *In Limine* to Bar Evidence and Argument Regarding Plaintiff's FECA/OWCP Claim**

1. Johnson sought compensation through the Federal Employees Compensation Act ("FECA"), which is administered by the Office or Workers Compensation Program ("OWCP), in 2013 for her September 9, 2013, incident involved in this case. Johnson offers exhibit 29, the Postal Service's response to the Department of Labor regarding Johnson's FECA/OWCP claim.

2. Any evidence, including exhibit 29, or any argument regarding the OWCP claim or the Postal Service's response to the Department of Labor (Pl.'s Ex. 29), should be barred for three reasons.

3. First, it is well-established that a Title VII plaintiff must exhaust her administrative remedies before bringing a cause of action for employment discrimination under Title VII. *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001). Generally, a "plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Teal*, 559 F.3d at 691; *see Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination"). "The purpose of this requirement is twofold: to promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them." *Teal*, 559 F.3d at 691; *see Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) ("allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge").

4. "To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge," the court must decide whether the allegations are "like or reasonably related

to" those contained in the EEOC charge." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001).

5. Here, there are no claims in Johnson's EEOC charge that are "like or reasonably related to" Johnson's OWCP claims (Joint Ex. 2, EEO Complaint). In fact, Johnson's OWCP claim is not even mentioned in her EEO complaint. *Id.* Allowing testimony regarding Johnson's OWCP claim now would prejudice the Postal Service because it did not seek discovery related to this issue, or otherwise develop a defense to this new claim.

6. Second, FECA claims are decided by the Department of Labor, not the Postal Service. 5 U.S.C. § 8101, *et seq*.

7. Third, this evidence or argument should be excluded because it is an improper collateral attack on the denial of Johnson's FECA claim. *Kyle v. Brennan*, No. 17 C 7646, 2018 WL 3232794, at *6 (N.D. Ill. July 2, 2018), citing *Brown v. Potter*, 67 Fed.Appx. 368, 370 (7th Cir. 2003).

8. Johnson had the opportunity to appeal the Department of Labor's decision through a separate process and chose not to do so. *Id.* She should not be allowed to now bring those claims into a discrimination case against a separate defendant. *Id.*

9. Accordingly, any evidence or argument regarding Johnson's FECA/OWCP claim should be excluded because Johnson failed to exhaust her administrative remedies as to that claim, the claim was not decided by the Postal Service, and it would be an improper collateral attack on the FECA process.

WHEREFORE, the defendant requests that the court bar any evidence or testimony regarding the plaintiff's FECA/OWCP claim.

**MIL No. 3: Defendant's Motion *In Limine* To Bar Hearsay Evidence**

1. Johnson claims that her supervisors made disparaging comments related to her disability but she was not present for any of these alleged statements. Compl. ¶ 42, Dkt. 1. Pl.'s Resp. to Def.'s Mot. Sum. Judg., at 12, 18, Dkt. 52. Specifically, Johnson claims that Campbell, Saddler, and Hall criticized Johnson for her disability when they told her she was in the "crazy house" and that management makes fun of her all the time. *Id.* Johnson herself was never present for and never heard these alleged statements from her supervisors. She bases these assertions solely on co-workers and her son, Darius Butts, who claims he heard Charles Bell (who was never disclosed as a witness in discovery) state that managers disparage Johnson. *Id.*

2. Johnson should be excluded from testifying about comments allegedly made by others when she was not present to hear any such comments, until and unless the proper foundation has been laid by an individual who was present for that conversation. This is a classic example of hearsay, and Johnson lacks personal knowledge to speak to what was said by a supervisor when she was not present for any such conversation. *Duncan v. Thorek Mem'l Hosp.*, 784 F. Supp. 2d 910, 921 (N.D. Ill. 2011) (excluding hearsay statements told to plaintiff by co-workers in a hostile work environment case).

3. Furthermore, Johnson should be barred from testifying to those statements prior to the proper foundation being laid under Rule 403 because, given the disparaging nature of the statements, the jury's passions will be inflamed without the underlying reliable factual testimony for that to be warranted. There is a significant danger of allowing the Postal Service to be vilified for alleged statements where there is no reliable testimony under oath that those statements were ever made by someone present for the conversation.

WHEREFORE, the defendant requests that the court bar any hearsay testimony from plaintiff.

**MIL No. 4:** **Defendant's Motion *In Limine* to Bar Argument that Plaintiff's Request for a Transfer was Denied**

1. Johnson should be limited from arguing that her transfer request was denied because that statement is factually incorrect and will likely confuse the issues, mislead the jury, and cause unfair prejudice. Johnson's transfer request was not denied; the Postal Service had not made any decision about Johnson's transfer request when the main incident occurred here on September 9, 2013, where, according to defendant, Johnson threatened her supervisor and was then escorted off Postal property and placed on emergency suspension. Mem. Op. at 6 – 8, Dkt. 58.

2. In fact, Johnson's request to transfer was approved, and she was transferred to another location in October 2013. *Id.* at 7 – 8.

3. In any event, allowing testimony that Johnson's request was denied would confuse the issues, mislead the jury, and create a danger of unfair prejudice.

WHEREFORE, the defendant requests that the court bar the plaintiff from arguing that her transfer request was denied.

**MIL No. 5: Defendant's Motion *In Limine* to Bar Evidence and Argument Regarding Settlement and Arbitration**

1. Johnson filed a grievance with her union regarding her request for a transfer and an agreement was apparently reached. Pl.'s Resp. Def.'s Sum. Judg. at 5 – 6, Dkt. 52.

2. In addition, Johnson's emergency placement status after she, according to defendant, threatened her supervisor on September 9, 2013, was eventually rescinded due to a grievance settlement.

3. Any evidence or argument of these settlements or of the settlement discussions should be excluded under Fed. R. Evid. 408.

WHEREFORE, the defendant requests that the court bar any evidence or argument regarding any settlement or settlement discussions of Johnson's claims.

**MIL No. 6: Defendant's *Motion In Limine* to Bar Opinion or Expert Witness Testimony**

1. Johnson disclosed her treating physicians, Drs. O'Leary and Gandhi, as fact witnesses but did not disclose them as expert witnesses. Exhibit 2, Rule 26(a) Disclosures.

2. The Federal Rules of Civil Procedure require "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

3. When a party, without substantial justification, fails to disclose information required by Rule 26(a), the party is not permitted to use at trial any undisclosed information unless the party's failure was harmless. Fed. R. Civ. P. 37(c)(1). The "exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004).

4. Even a non-retained expert must be disclosed. Fed. R. Civ. P. 26(a)(2)(A). "Failure to comply with Rule 26(a)(2)'s requirements results in sanction: the offending party is not allowed to introduce the expert witness's testimony as 'evidence on a motion, at a hearing, or at trial.'" *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008).

5. Thus, the testimony of Drs. O'Leary and Gandhi should be limited to factual testimony about their treatment and care of Johnson and Johnson's medical condition, and it should not include opinion testimony.

6. Allowing them to testify to opinions not disclosed would prejudice the Postal Service because the Postal Service did not have notice of those opinions and thus did not engage in expert discovery and did not retain its own expert to respond.

7. Thus, any testimony outside of fact witness testimony from Johnson's treaters should be excluded.

WHEREFORE, the defendant requests that the court bar any opinion or expert testimony from Drs. O'Leary and Gandhi.

**MIL No. 7: Defendant's Motion *In Limine* To Bar Evidence And Argument Regarding Dismissed Counts And Summary Judgment Decision**

1. On March 9, 2020, the court denied the defendant's motion for summary judgment. Dkt. 58.

2. Also, Johnson's original complaint alleged that Defendant violated the ADA by (1) releasing her medical information to third parties and (2) intentionally inflicting emotional distress through disability-related harassment. Dkt. 58, at 1 fn. 2. The court dismissed both counts.

3. The court dismissed Count II without prejudice on August 6, 2018, noting that the parties failed to address whether there is a private right of action under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and the court dismissed Count III "without prejudice to Plaintiff's recovering damages that include any emotional distress she suffered for violation of her rights under ADA." Dkt. 58, at 1 fn. 2.

4. Johnson has not renewed either claim, and as such, evidence or argument related to either claim should be excluded as irrelevant and misleading to the jury, specifically any evidence or argument that the Postal Service improperly disclosed Johnson's medical information. Fed R. Evid. 401, 403.

5. Any argument or evidence regarding the dismissed claims would be immaterial to Johnson's disability discrimination and/or accommodation claim, would unfairly prejudice the Postal Service, would confuse the issues and mislead the jury by falsely suggesting that the dismissed claims are still part of this case, and would cause undue delay. *See* Fed. R. Evid. 401, 403.

6. Similarly, any argument or evidence related to the court's summary judgment decision would be unfairly prejudicial to the Postal Service, confuse the jury, and cause undue delay. Fed. R. Evid. 401, 403.

7. Johnson thus should be barred from presenting any evidence or argument regarding those dismissed claims, or any other claim not presently before this court, and she should be barred from presenting any evidence or argument regarding the summary judgment decision.

WHEREFORE, the defendant requests that the court bar evidence or argument regarding dismissed claims and regarding the court's decision on the defendant's motion for summary judgment.

**MIL No. 8:    Defendant's Motion *In Limine* To Bar Evidence And Argument Regarding Any Medical Evidence That Predates May 2013**

1.     According to Johnson's own allegations, the alleged discrimination began in May 2013.  Compl. at 3, Dkt. 1.

2.     Portions of Johnson's medical records, plaintiff's exhibits nos. 20 and 21, include therapy records dating back to 2011, several years prior to the relevant time period, and therefore should be excluded under Fed R. Evid. 401, 403.

3.     For the same reasons, any testimony from Drs. O'Leary and Gandhi should be limited to May 2013 and later.

WHEREFORE, the defendant requests that the court bar any evidence or argument regarding medical evidence that predates May 2013.

14

**MIL No. 9: Defendant's Motion *In Limine* To Bar The Jury From Deciding Any Issue Related To Back Pay**

1. Johnson is claiming loss of back pay as the result of the alleged discrimination.

2. Defendant objects to the jury deciding any issue or amount of back pay because back pay "remains a form of equitable relief under Title VII (and the ADA), and that it is for a judge, not a jury, to decide." *Taylor v. Gilbert & Bennett*, No. 95 C 7228, 1997 WL 30948, at *4 (N.D. Ill. Jan. 15, 1997); *accord Snider v. Consolidation Coal Co.*, 973 F.2d 555, 561 (7th Cir. 1992).

3. Accordingly, the court should not allow the issue of back pay to be decided by the jury.

WHEREFORE, the defendant requests that the court not allow the issue of back pay to be decided by the jury.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Valerie R. Raedy
    VALERIE R. RAEDY
    KURT N. LINDLAND
    Assistant United States Attorneys
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-8694
    (312) 353-4163
    valerie.raedy@usdoj.gov
    kurt.lindland@usdoj.gov