**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARON JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 17 C 8878** |
| | ) | |
| **LOUIS DeJOY, Postmaster General, United States Postal Service** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sharon Johnson alleged that she was subject to a hostile work environment during her employment with Defendant, the United States Postal Service ("Postal Service"), in violation of the Rehabilitation Act of 1973. 29 U.S.C. § 701 *et seq*. A jury returned a verdict for the Postal Service on that claim, and Johnson has moved for judgment as a matter of law (FED. R. CIV. P. 50) or alternatively for a new trial (FED. R. CIV. P. 59 and 51(d)(2)). Johnson claims that she is entitled to such relief based on a jury instruction that, she claims, misstated the causation standard for her claim. For reasons explained here, Johnson's motion(s) for judgment as a matter of law or for a new trial [130] are denied.

## BACKGROUND

Johnson has worked for the Postal Service since 1994. Johnson contends in this lawsuit that she was harassed by her supervisors because of her disability, an anxiety and depression disorder, from February 2011 to September 2013. (Pl.'s Rule 50 Mot. for J.as a Matter of Law and Rule 59 Mot. for New Trial (hereinafter, "Pl.'s Mot."*)* [130] at 6; Trial Tr. vol. 1A at 49, 84, 105.)

### A. Trial Evidence

In her trial testimony, Johnson described harassment she claimed to have experienced at the hands of supervisors Rondell Saddler and Deundra Campbell, and manager Janice Hall. Difficulties with her supervisors continued for many years, continuing before and after she

successfully bid to transfer from the Lincoln Park facility, where she had been stationed since 2006, to the Morgan Park facility in 2015. (Trial Tr. vol. 1A at 44, 108; Trial Tr. vol. 1B at 143–44.)

Johnson asserted that this harassment created an increasingly hostile and abusive work environment. She claims that at least nine former supervisors treated her unfairly (Trial Tr. vol. 1B at 139, 143), but Plaintiff focused on actions taken by Hall, Campbell, and Saddler. For example, Plaintiff claimed that Saddler had directed Richard Shudder, a custodian, to follow her to the bathroom, and he did so. (Trial Tr. vol. 1A at 98–99.) Plaintiff testified that when she reported Shudder's conduct to Saddler, he dismissed her complaints, and he and other supervisors asked whether she was taking her medication. (Trial Tr. vol. 1A at 82, 98, 103.) Without offering specifics about dates or times, Plaintiff testified generally that Saddler told all of her coworkers not to talk to her because she was "crazy," and that as a result, her coworker Donald Pritchard began mocking and making fun of her by making remarks like "that's why [Saddler] follows you." (Trial Tr. vol 1A at 85–86.)

In fact, according to Plaintiff, supervisors did follow her to her car, to the bathroom, and to McDonald's or 7-Eleven during work breaks. (Pl.'s Mot. at 6.) Supervisors confiscated her work tools as well. Plaintiff testified that Supervisor Campbell referred to Plaintiff's mental health treatment as the "crazy ward." The harassment culminated in an episode on September 9, 2013. Saddler, Campbell, and Hall testified that on that date, Johnson made comments that they interpreted as a threat to harm Saddler, used profanity, and was combative towards her co-workers. In response to this conduct, Plaintiff was escorted from the Postal Services premises by Postal Service police, and she was placed on Emergency Placement in Off-Duty Status.[1] (*Id.*

[1] Emergency Placement in Off-Duty Status refers to the immediate placement of an employee in a non-duty, non-pay status pending further investigation of the threat or assault committed by the employee. (Def. Ex. 2 at 12). Normally, a determination of an appropriate action would be made within 72 hours of an incident involving a threat or assault. (*Id.*) The purpose for such a placement is to separate employees from the workplace until they can be

at 7; Trial Tr. vol 1A at 76, 90–91.) Plaintiff contends that her mental condition was the but-for cause for her harassment because it was not until after her mental health condition was disclosed to her supervisors during a conversation on September 9, 2013 that she was stripped of her tools and escorted from the premises. (*Id.* 8–9; Trial Tr. vol. 2 at 389.)

The Postal Service's witnesses included Hall, Campbell, Saddler, and Kenneth Brown, one of Johnson's previous supervisors against whom she had issued a previous threat, during an altercation on January 9, 2013. (Joint Ex. 1 [125-1] at 18–19.) At trial, Campbell, Brown, and Saddler denied following Plaintiff, but they admitted that they went looking for her on occasions when she unexpectedly left her work assignment or took extended breaks. (Trial Tr. vol. 2, at 368, 406–07, 450–51; Trial Tr. vol. 3A at 524.) Campbell and Saddler denied that they directed Shudder, or anyone else, to follow Johnson. (Trial Tr. vol. 2, at 410, 423; Trial Tr. vol. 3A at 515; Joint Ex. 1 at 20–21.) They recalled the bathroom incident that occurred on September 5, 2013 between Johnson and Shudder, but their account is different from Plaintiff's. According to Campbell, Shudder, a custodian, had reportedly knocked on the bathroom door twice and, after getting no response, entered to do his work. Johnson was inside and became angry and suspicious of his conduct. Johnson became angry, shouted expletives, followed Shudder, made lewd comments, and verbally harassed him about "trying . . . to smell her private parts." (Trial Tr. vol. 1B at 238, 240; Trial Tr. vol. 2 at 353, 370, 396, 410; Trial Tr. vol. 3A at 517–18, 592–93; Joint Ex. 1 at 3, 20–21.)

With respect to Johnson's complaints of harassment, Defendant's witnesses testified that what Johnson characterized as harassment was nothing more than reasonable work instructions. (Trial Tr. vol. 1B at 245, 247; Trial Tr. vol. 2 at 293, 358–59, 402, 412, 447, 448; Trial Tr. vol. 3A at 522; Joint Ex. 1 at 2–3.) They acknowledged removing tools from her but explained that the materials in question were prohibited on the floor, as clerks are not permitted to carry mace or

---

interviewed, or the removal of the employee from the facility if there is likelihood of physical violence. (*Id.*)

tools, such as box cutters or knives, to open boxes and packages; Plaintiff's job duties did not require the use of such equipment. (Trial Tr. vol. 2 at 343–44, 346–47, 351–52, 355, 391, 429–430; Trial Tr. vol. 3A at 552.)

Johnson's supervisors testified that Campbell called police on September 9, 2013 because she threatened Saddler, and that her previous conduct led them to believe the threat was credible. (Trial Tr. vol. 2 at 368, 387, 389, 400.) Supervisor Campbell and Postal Police Inspector Mike O'Connor testified that when she threatened Saddler, it was Johnson, not Saddler, who referred to time she had spent "in the crazy people ward" as a way of substantiating her own threat. (Trial Tr. vol. 2 at 430–31(testimony that Johnson warned Campbell, "I carry Mace and a knife, and it would be a fatality" and pointed out that she had been "in a crazy people ward"); Trial Tr. vol. 3A at 584–85; Defense Ex 1 at 1, 2; Joint Ex. 1 at 9,10, 12.) Thus, according to Defendant, the Postal Service had a basis for disciplining Johnson that was unrelated to her mental health condition: She had previously been placed on "Emergency Placement in Off-Duty Status" after an incident on January 9, 2013 when she threatened bodily harm to Brown, months before the September 9 incident. (Joint Ex. 1 at 18–19.) During that earlier altercation, Johnson threatened to shoot Brown after he approached her car when she was allegedly on her break. (*Id.*)

Johnson's supervisors denied ever having discriminated against Johnson or called her names. (Trial Tr. vol. 2 at 410.) Saddler denied knowing about Johnson's need for medication or speaking with her about it other than on one instance (Saddler did not recall the date) when Johnson asked to be left alone because she had not taken her medication. (Trial Tr. vol. 3A at 519–21.) Hall, Johnson's manager, asked Johnson about her medication only after becoming aware of her mental condition and when she came to Hall to report feelings of anxiety around May or June 2013. (Trial Tr. vol. 3B at 635, 637.) Besides Hall, none of Johnson's supervisors were aware of any disability before September 2013. (Trial Tr. vol. 2 at 401, 442–43; Trial Tr. vol. 3A at 524.)

According to her supervisors, Johnson had a history of altercations with supervisors, coworkers, and a customer involving profanity and threats. (Trial Tr. vol. 1B at 139, 143–44, 234–35, 249; Trial Tr. vol. 2 at 319, 386; Trial Tr. vol. 3A at 556, 590.) Michael O'Connor, a postal investigator involved with the Postal Service's investigation of Johnson, testified about three incidents in 2013, prior to September 9, in which Johnson reportedly made threats. (Trial Tr. vol. 3A at 590.) Other evidence supported Defendant's contention that Johnson had been confrontational and vulgar in an altercation with her co-worker, Pritchard, on September 7, 2013 because she was upset about being disciplined for taking extended breaks and believed that Pritchard had reported these breaks to supervisors. (Trial Tr. vol. 2 at 397, 399; Trial Tr. vol. 3A at 527–28, 595–97; Joint Ex. 1 at 3, 16, 17.)

### B. Procedural History

The court denied summary judgment, *see Johnson v. Brennan*, No. 17 C 8878, 2020 WL 1139253 (N.D. Ill. Mar. 9, 2020), and the case proceeded to a three-day jury trial, from January 23 through January 25, 2023 on Plaintiff's claim that she was subjected to harassment and a hostile work environment on the basis of her anxiety disorder. The proposed verdict form asked the jury whether Plaintiff "has proven by a preponderance of the evidence her claim that she was subject to a hostile work environment on the basis of a disability." (Pl.'s Mot. at 3.) That language generated a question from the jury: During deliberations on January 27, 2023, the jurors sent a note asking the court whether, for Plaintiff to prevail, she need to prove that the hostile work environment was "a result of the disability only?"

In the ensuing discussion with the court, Johnson's attorney cited to *Hall v. City of Chicago*, 713 F.3d 325, 335 (7th Cir. 2013), and proposed that Johnson "need only establish that disability played a part in the supervisor's actions." (*Id.)* Judge Shah, who was supervising the jury's deliberations, reviewed *Hall*, but concluded it did not support Johnson's proposed answer. (Def.'s Resp. at 1.) Judge Shah observed, "Their question is slightly different, and it might be pointing to the ambiguity in the verdict form, which uses the language 'on the basis of' instead of 'because

of'." (Pl.'s Mot. at 4.) After further conference, the parties agreed to the instruction Judge Shah ultimately gave: he directed the jury to re-read a portion of the jury instructions, which explained that to find in Plaintiff's favor, they were required to find that the "conduct occurred because Johnson was disabled and the verbal harassment exacerbated her condition, and Johnson requested to be transferred." (Jury Instructions [127] at 20.) The jury returned a verdict four hours later in favor of the Postal Service. (Pl. Mot. at 4.)

Johnson moves for judgment as a matter of law or, in the alternative, for a new trial. In her February 24, 2023 motion, she argues that the jury would have found in her favor on the claim of hostile work environment, had the court answered "no" to the jury's question. (*Id.* at 5.) Alternatively, Johnson argues that a new trial is warranted because the jury instructions erroneously directed the jurors that they needed to find that Johnson was harassed "because" she was disabled. (*Id.)* She also reserved her rights to raise other arguments. [2] (Pl.'s Mot. at 9.) At a hearing on this motion, the court requested briefing limited to the question whether the court's answer to the jury was an accurate statement of the law. As explained below, this court concludes it may not have been, but because, if anything, the error favored Plaintiff, it was not prejudicial. As a result, the court will enter judgment on the verdict in favor of the Postal Service.

## DISCUSSION

### I. Legal Standard

Rule 50 of the Federal Rules of Civil Procedure states that a court may override a jury's verdict if the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). A court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000). In ruling on such a motion, the court examines the entire record to determine

[2] These clams involve failure to accommodate, and jury instruction error for using terminology "and" instead of "and/or", and "because of."

whether the evidence submitted, and all reasonable inferences, were sufficient to support the jury's verdict. *United States v. Funds in the Amount of One Hundred Thousand & One Hundred Twenty Dollars ($100,120.00)*, 901 F.3d 758, 770 (7th Cir. 2018) (internal citations omitted). Only if no rational jury could have found for the nonmovant may a court overturn the jury's verdict. *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir. 2019).

Under Rule 59, the court may grant a new trial for any reason recognized by federal law. FED. R. CIV. P. 59(a)(1)(a); *Ruiz-Cortez*, 931 F.3d at 602. "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). Johnson asks the court to overturn the jury verdict in favor of the Postal Service, contending that when the jury asked, "does the hostile work environment need to be a result of the disability only?", the court should have answered "no." Had the court done so, Johnson believes that the jury would have returned a verdict in her favor. (Pl.'s Mot. at 5.) Alternatively, Johnson argues that a new trial is warranted because of the improper jury instructions. (*Id.*)

**II. Standard of Causation**

As Johnson sees things, she was entitled to prevail so long as she showed that "the disability played a part in the supervisor's actions." (Pl.'s Mot. at 3.) At trial, Johnson cited to *Hall v. City of Chicago*, 713 F.3d 325, 335 (7th Cir. 2013) in support of this argument. In *Hall*, the plaintiff sued the City of Chicago for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, asserting that her supervisor assigned "menial work," prohibited her coworkers from speaking with her, and made aggressive comments about women in her presence. *Id.* at 328–29. Because the Seventh Circuit concluded there was evidence from which a jury could find that gender "played a part" in the supervisor's conduct towards plaintiff, the court reversed summary judgment and remanded the case for trial. *Id*. at 334. Johnson argued that a similar instruction should be used here, but Judge Shah read the *Hall* standard as one requiring "but-for" causation; rather than answering the jurors' question with "yes" or "no," Judge Shah instead

referred the jury to language on page 20 of the instructions, to which counsel had previously agreed.[3] (Trial Tr. Vol. 4 at 732–733.)

*Hall*, a sex discrimination case, was governed by the standards of Title VII. Johnson argues that the same standards apply here, and that both the Rehabilitation Act and American with Disabilities Act ("ADA") prohibit discrimination against individuals "by reason of" or "on the basis of" their disability. The proof standard under ADA appears to be similar to that under Title VII, and prohibits discharging an employee "on the basis of" disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). The case Plaintiff cites, however, *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006), arises in a different context: in that case the operator of a mental health clinic challenged a city zoning appeals board's denial of the plaintiff's request to move the clinic to a new location. On appeal from a ruling in favor of the plaintiff, the Court of Appeals remanded for a determination of whether the plaintiff would have been permitted to relocate "but for" the fact that its clients are disabled. The statutory provisions at issue there—section 504 of the Rehabilitation Act and Title II of the ADA—prohibits exclusion of disabled persons from publicly-funded programs. As the Seventh Circuit recognized, § 504 prohibits excluding of any such person "solely by reason of her or his disability." 465 F.3d at 746.

Both the Americans with Disabilities Act and the Rehabilitation Act also prohibit discrimination in employment, but the case law is clear that the causation standard in the Rehabilitation Act, which governs this case against the Postal Service, is stricter than the one imposed by the ADA. *Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022); *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021) ("The Rehabilitation Act has a stricter causation requirement: the plaintiff's disability must be the *sole* reason for the alleged discriminatory action; this contrasts with the ADA, which requires only that the plaintiff's disability be *a* reason for the challenged

[3] Element 4 of page 20 of the jury instructions directs the jury that Plaintiff must prove that "The [offending] conduct occurred because Plaintiff was disabled and the verbal harassment exacerbated her condition, and Plaintiff requested to be transferred." (Jury Instructions [123] at 20 ¶ 4.)

action." (emphasis in original)). This court itself noted that distinction in its summary judgment ruling. *Johnson*, 2020 WL 1139253 at *6.

Johnson nevertheless insists that a "but for" standard applies in this case, one she deems more relaxed than the "sole cause" test. In her view, when the jury asked whether the hostile work environment need to be a result of the disability only, the court should have responded "no," rather than directing the jury to review the instructions. But as noted, the cases she relied on, *Wisconsin Cmty Servs., Inc.*, and *A.H. ex. rel. Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 598 (7th Cir. 2018) quoted the "solely by reason of" language in assessing whether persons are excluded from government programs by reason of disability. The other cases she cites do arise in the employment setting, but all involve other anti-discrimination statutes: *McDonald v. City of Wichita, Kan.*, 735 F. App'x 529, 531 (10th Cir. 2018) (Title VII); *Jones v. Okla City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010) (Age Discrimination in Employment Act); *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013)(Age Discrimination in Employment Act); *United States ex. rel. Barrick v. Parker Migliorini Int'l, LLC*, No. 2:12-cv-00381-JNP-CMR , 2021 WL 2717952 (D. Utah June 30, 2021) (retaliation prohibition in False Claims Act).[4]

In this case, governed by the Rehabilitation Act, when the jury asked, "does the hostile work environment need to be a result of the disability only?" the answer to the jury's question should have been "yes". But that is not the answer they got: although the court did not say "no," the court did instruct, in effect, that the jury apply an arguably less stringent standard to the facts presented to them (that they find that "the conduct occurred because Plaintiff was disabled . . .

[4] Johnson also cites to *Bostock v. Clayton County,* 140 S. Ct. 1731, 1739 (2020), but that case does not support her position here. In *Bostock*, the Court held that the employer violated Title VII by firing individuals merely for being gay or transgender, and that Title VII's "adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." Significantly, however, the Court explicitly distinguished that Title VII standard from the one in other statutes that use the word "'solely' to indicate that actions taken 'because of' the confluence of multiple factors do not violate the law." The Rehabilitation Act is one of those other statutes. Under the Rehabilitation Act, the more stringent "solely by reason of" standard applies.

."). The jurors nevertheless returned a verdict favorable to the Postal Service. Judge Shah directed the jurors to review an instruction that the parties had agreed to prior to trial. That language did not include the stringent "solely by reason of" proof standard imposed by the Rehabilitation Act, but perhaps should have. The court concludes that any error in Judge Shah's communications with the jurors was not prejudicial to Johnson.

**III. Jury Confusion**

Johnson next argues that the jury note demonstrates the jurors were confused about the instructions they were given. That confusion, she contends, requires the court to enter judgment as a matter of law or alternatively order a new trial. *United States v. Sims*, 329 F.3d 937, 943 (7th Cir. 2003) ("[T]he court has an obligation to dispel any confusion quickly and with concrete accuracy."); *Balthazar v. City of Chicago*, 735 F.3d 634, 638 (7th Cir. 2013). This argument fails for the same reason already discussed: to the extent the jury was confused at all, the instructions given by the judge in response to their question were favorable to Plaintiff. Johnson is correct that the Seventh Circuit has emphasized the importance of providing clear jury instructions to the jury, but she has not identified a material error in the methodology of resolving the jury's question. Notably, when the court proposed an answer to the jury's question, Johnson's counsel deliberated and ultimately declined to object to the proposed response. (Trial Tr. vol. 4 at 734–35.)

In *Balthazar*, in contrast, the jury asked a question related to the definition of a search, and the judge simply told them that the law they were asked to apply was contained in the jury instructions without any specificity. *Balthazar*, 735 F.3d at 638. That is not what happened here, where after conferring with both parties, the court directed the jury specifically to element 4 of page 20 of the jury instructions. After the court answered their question, they did not ask any other questions and returned a verdict later that afternoon. Johnson has not demonstrated that any remaining confusion existed at all, or, if it did, that she was prejudiced by the instruction given.

Though Johnson did not object at the instruction conference to the language she now challenges, she urges that the instruction was plain error and violates Federal Rule of Civil

Procedure 51(d)(2). "A court may consider plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Johnson has provided nothing to the court to demonstrate that her substantial rights had been affected by the instruction. To the contrary, the jury found in favor of the Postal Service using an an arguably more lenient causation instruction than the one that governs Rehabilitation Act claims. Johnson's motions for judgment as a matter of law under Rule 50 and motion for a new trial under Rule 59 are denied.

**IV. Weight of Evidence**

Finally, Johnson suggests that the jury verdict was against the weight of the evidence. The argument is not a strong one, and the court did not request briefing on it for that reason. On either a Rule 50 or a Rule 59 motion, the court construes the evidence in the light most favorable to the jury's determination and will not reweigh that evidence.

Plaintiff claims she was harassed by supervisors, but the jury was entitled to credit the explanation offered by Mr. Saddler and other witnesses: they were not following her as a form of harassment, but instead trying to track her down when she was unexpectedly missing from work. She alleged that Mr. Shudder, the custodian, followed her on a daily basis, but the only trial evidence related to a single incident in which Plaintiff claimed that he had tried "to smell her private parts." The jurors were entitled to discount that testimony in favor of evidence that Shudder had entered in the bathroom in an effort to do his job. Plaintiff believes her tools were taken from her because of her disability, but supervisors explained that postal workers had no on-the-job need for a pocket knife, letter opener, box cutter or mace, and that they would generally remove these items from employees.

Plaintiff asserted that her supervisors referred to her as being in the "crazy house," but the evidence did not support that claim either. Plaintiff's own witness, Ms. Hines, testified that she had never heard Mr. Saddler call Plaintiff "crazy." (Trial Tr. vol. 1B at 225.) In an incident report, Ms. Campbell recounted that it was Plaintiff who referred to having been "in the crazy people

ward" when she uttered what supervisors deemed a threat against Mr. Saddler. Some of Plaintiff's co-workers may well have referred to her disparagingly, but the evidence did not support that her supervisors called her "crazy" or referred to her treatment as the "crazy house" or "crazy ward."

A reasonable jury could perhaps have found that Plaintiff's anxiety disorder was the reason that supervisors called police on September 9, but a reasonable jury could also have found that they were in fact motivated by threats she uttered. As noted, she had been placed on "Emergency Placement in Off-Duty Status" months earlier, in January 13, undermining the inference that it was awareness of her disability that led to Defendant's actions on September 9. (Joint Ex. 1 at 18-19.) Plaintiff had a history of altercations with her supervisors; she claimed that at least nine former supervisors were abusive at more than one Postal Service facility. Inspector O'Connor reported that she had made threats on three prior occasions in 2013. Supervisors testified, and the jurors were entitled to believe, that the "harassment" Plaintiff claimed she suffered amounted to nothing more than reasonable work instructions, and that Plaintiff herself was often combative and abusive of coworkers and at least one customer. Plaintiff alleged that her co-worker, Donald Pritchard, had mocked her, but the jury was entitled to believe Defendant's evidence that it was Plaintiff who harassed Mr. Pritchard by screaming, cursing at him, and following him around with a clinched fist because she believed he "snitched" on her for taking extended breaks. Plaintiff asserted that her supervisors would harass her on a "daily basis" by asking if she took her medication. But the jury was entitled to believe Mr. Saddler's testimony that he the only occasion on which he ever spoke to Plaintiff about taking medication was the time she asked to be left alone because she had not done so, and Ms. Hall's testimony that she asked Plaintiff about her medication only after Plaintiff commented that she felt anxious.

"A new trial is appropriate where the verdict is against the clear weight of the evidence or the trial was not fair to the moving party." *Morris v. BNSF Ry. Co.,* 969 F.3d 753, 764 (7th Cir. 2020) (citing *Johnson v. Gen. Bd. of Pension & Health Benefits of the United Methodist Church,* 733 F.3d 722, 730 (7th Cir. 2013)). "[A] new trial should be granted 'only when the record shows

that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience'." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (quoting *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir.1991)). Put simply, Plaintiff has not met this test.

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for judgment as a matter of law, or alternatively, for a new trial [130] are denied. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff. This ruling is final and appealable.

ENTER:

Dated: September 27, 2023

REBECCA R. PALLMEYER
United States District Judge